**SO ORDERED.**

**SIGNED this 21 day of December, 2007.**



_____
 ROBERT E. NUGENT
 UNITED STATES CHIEF BANKRUPTCY JUDGE
_____

OPINION DESIGNATED FOR ON - LINE PUBLICATION
BUT NOT PRINT PUBLICATION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| **EDWARD H. FOTH,** ) | **Case No. 06-10696** |
| ) | **Chapter 7** |
| Debtor. ) | |

### MEMORANDUM OPINION

This matter is before the Court on the Trustee's objection to debtor's claim of exemption in life insurance proceeds.[1] The Trustee Edward J. Nazar appeared in person and by his attorney L. Kathleen Harrell-Latham of Redmond & Nazar, L.L.P., Wichita, Kansas. The debtor Edward H. Foth appeared by Stephen W. Johnson, Newton, Kansas. The Court heard evidence in this case on

---

[1] Dkt. 45.

-1-

August 21, 2007 and received post-trial briefs from the parties.[2] While only the Trustee testified at trial, 27 exhibits were admitted as evidence and the parties entered into some 34 numbered stipulations in the pretrial order. After reviewing the record in this case, the Court is now prepared to rule.[3]

**Findings of Fact**

Edward Foth filed this chapter 7 bankruptcy case on May 10, 2006. On May 21, 2006, his son Thomas, committed suicide at Newton, Kansas. Unbeknownst to Edward, he was a beneficiary of three insurance policies on his son's life. He did not list his interest in the policies on his bankruptcy schedules. From the Trustee's testimony and the correspondence between him and Edward's first attorney William Brown ("Brown"), the Court gleans that Brown conceded at the outset that the insurance benefits were not exempt.

In late July or early August, Edward received death benefits in the amount of $59,518.50. No attempt to amend the schedules as required by the Rules was made at this time.[4] There is no question, however, that the Trustee was well aware of the existence of this asset at this time. Edward appeared for his first meeting of creditors on June 9, 2006, after his son's death, and, though the record is silent on this point, the Court assumes the Trustee learned of the insurance benefit at that time because on June 27, 2006, the Trustee filed a motion for turnover of "information" pertaining to the life insurance proceeds and any probate documentation.[5]

---

[2] Dkt. 68 and 70.

[3] The court has jurisdiction of this core proceeding under 28 U.S.C. § 157(b)(E) and (O).

[4] *See* Fed. R. Bankr. P. 1007(h).

[5] Dkt. 12.

-2-

As early as July, 2006, Brown wrote to the Trustee advising him concerning the amount of insurance benefits to be received by Edward. Nazar responded on July 18, 2006 that he was willing to release some of the insurance proceeds to Edward's use for Thomas's final expenses. From the context of the Trustee's letter, he had not yet made a demand for turnover of the funds. Instead, his letter states "I should ascertain the claims in Mr. Foth's estate and obtain sufficient funds for the payment of those creditors . . . and then remit back to the debtor . . . any funds that were not necessary."[6] He adds that he would "submit a claim bar date" which the Court takes to mean a report of newly-discovered assets.[7] It is apparent from the entire body of correspondence between Brown and the Trustee that no one ever discussed the possibility that these insurance proceeds might be exempt.

What is also curious here is that the July 18 letter was written after the Trustee's turnover motion. Brown never filed an objection to the turnover motion and the Court entered a default order on July 26, 2006.[8] The tone of the Trustee's and Brown's correspondence reflects that counsel were proceeding informally, perhaps leading Brown to not be as attentive to the record as the Court might have wished.

On July 30, 2006, Brown wrote to Edward and told him that "the trustee is presently entitled to have all estate proceeds paid to him."[9] Referring to a "settlement," Brown told Edward that he should pay all of the insurance to Brown's trust account immediately. He also told him that "there

---

[6] Ex. 3.

[7] On July 21, 2006, the Trustee did in fact file a notice of late-discovered assets. Dkt. 17.

[8] Dkt. 19.

[9] Ex. 5.

-3-

must be a court approval of a settlement with you. Know that the creditors can object to the settlement and the Court can hear their side and rule in their favor . . . ." Brown also told Edward that this process would take 90 days and that he should not spend the money before the settlement was approved. The letter does not describe the terms of the settlement. Nor does it advert to the exemption issue in any way. The Trustee testified that the terms of the settlement were that Edward would retain enough of the insurance benefits to repay his son's final expenses.

Edward's discovery responses state that, during this time, he believed his counsel was continuing to negotiate with the Trustee. On July 31, 2006, Edward himself wrote to the Court explaining his misfortune and requesting that the Court dismiss his case out of compassion.[10] On the same day, he wrote to the Trustee asking to have his case dismissed.[11] The Clerk of the Bankruptcy Court issued its customary response directing Edward to file a formal pleading. While these July 31 letters do not mention the "settlement," their tone and content in no way indicates that Edward was ready and willing to concede any of the funds to the Trustee. This causes the Court to question whether there was a settlement at all in July and whether Edward had ever authorized Brown to agree to one. Indeed, by September 1, Edward had not yet forwarded funds to the Trustee nor had he communicated with Brown, according to Brown's e-mail to the Trustee on September 1.[12]

Thereafter, on September 7, the Trustee filed an adversary proceeding to revoke Edward's

---

[10] Ex. 6.

[11] Ex. 7.

[12] Ex. 9.

-4-

discharge, again suggesting that an agreement was not in prospect.[13] On October 6, Brown e-mailed the Trustee the following:

> Mr. Foth desires not to cooperate. This is official. Discharge has not been granted so dismissal of his petition would be in order as per your complaint. We will file no response.[14]

Clearly, by this time, there was no agreement of any kind. And, for some reason Brown apparently mistakenly believed that not answering the Trustee's adversary complaint objecting to discharge would result in dismissal of the bankruptcy case – a significantly lighter penalty than the denial of discharge actually sought. [15]

But then, on October 23, Brown faxed the Trustee copies of insurance information including copies of benefit checks as well as checks written to pay Thomas's final expenses.[16] Apparently, Edward had delivered unspent insurance benefits to Brown on October 20 and Brown was holding them in his trust account.[17] In response, on November 9, the Trustee wrote to Brown that he would accept $46,439.44 in settlement, the amount left after Edward's payment of his son's funeral, burial

---

[13] Adv. No. 06-5417. Technically, the Trustee's complaint was to deny, rather than revoke, Edward's discharge since the discharge had not yet been entered. Edward's discharge was entered January 19, 2007. Dkt. 40.

[14] Ex. 11.

[15] Shortly after Brown's e-mail, the Trustee wrote to the United States Trustee's office asking for a review and investigation into Edward's retention of the insurance benefits. In that correspondence, the Trustee represents that "Brown told me that he will consent to my order revoking discharge." Ex. 12.

[16] Ex. 19.

[17] Ex. 21.

and final expenses and his daughter's car repair, in exchange for dismissing the § 727 complaint.[18] The Trustee's letter notes, " . . . this is an asset of the bankruptcy estate and I do not believe there is any basis that the proceeds held in your trust account can be withheld and not surrendered to me."[19] On November 14, Brown sent the Trustee a check for $46,439.44, the amount that Edward had turned over to Brown.

On November 16, 2006, Edward wrote the Trustee a letter in which he advised that he had "released" Brown as his counsel and was now representing himself.[20] He renewed his request that the Trustee "release" some of the insurance money for his and his family's use. He wrote the Trustee a second letter that day, stating that he did not want to lose the money to the court and that he had understood a bankruptcy case could be dismissed if the debtor did not cooperate.[21] He apologized for his lack of cooperation which, he said, only occurred because he thought the case would be dismissed if he did not cooperate. Notwithstanding receipt of Edward's correspondence, the Trustee submitted and the Court entered on November 24, 2007 a journal entry dismissing the adversary proceeding without prejudice. Two days later, Brown filed a motion to withdraw as Edward's counsel.

Sometime thereafter, Edward's present counsel, Steven Johnson, contacted the Trustee raising the exemption issue and on December 27, 2006, the Trustee wrote Johnson advising that (1)

---

[18] Ex. 20. The settlement also contemplated that Edward would repay his daughter's car repair bill of some $1,500 by signing a promissory note to repay it over time.

[19] *Id.*

[20] Ex. 22.

[21] Ex. 23.

-6-

he believed Edward was estopped from exempting these funds by his prior conduct;[22] and (2) that the Kansas life insurance exemption did not apply in BAPCPA cases.[23] The Trustee did offer to resolve the matter for $25,000. His letter also included a draft adversary complaint he intended to file to reinstate the discharge revocation proceedings. In this complaint, the Trustee raises, apparently for the first time, his position that the Kansas exemption statutes are "preempted" by § 541 of the Code.

On January 16, 2007, Johnson entered his appearance in the case and amended Edward's Schedules B and C to include a reference to the after-acquired property and claimed these insurance benefits exempt from his bankruptcy estate pursuant to KAN. STAT. ANN. § 60-2313(a)(7). He did not seek an order extending the Rule 1007(h) ten-day period in which to disclose and exempt after-acquired estate property. The Trustee timely objected and this contested matter ensued. The Trustee claims that he is entitled to recover the death benefits paid to Edward under several substantive and procedural theories.

**Analysis**

Kansas debtors have traditionally been permitted to exempt from execution the cash value or other beneficial interest in a life insurance policy under KAN. STAT. ANN. § 40-414(a)(4) (2000).[24]

---

[22] The Trustee asserted that he dismissed the adversary proceeding because Brown had turned over the insurance benefits.

[23] Ex. 25.

[24] KAN. STAT. ANN. § 40-414(a)(4) provides: "If a life insurance company or fraternal benefit society issues any policy of insurance or beneficiary certificates upon the life of an individual and payable at the death of the insured, . . . to any person or persons having an insurable interest in the life of the insured, the policy and its reserves, or their present value, shall inure to the sole and separate use and benefit of the beneficiaries named in the policy and shall be free from: . . . the claims and judgments of the creditors and representatives of any person named as beneficiary in the policy of insurance."

-7-

This provision is carried into the Kansas exemption scheme by reference in KAN. STAT. ANN. § 60-2313(a)(7) (2005). It provides: :

> Except to the extent otherwise provided by law, every person residing in this state shall have exempt from seizure and sale upon any attachment, execution or other process issued from any court in this state: . . . Any interest in any policy of insurance or beneficiary certificates upon a person's life exempt from process pursuant to K.S.A. 40-414 and amendments thereto.

Until the enactment of BAPCPA, it was unquestioned in Kansas that when the legislature opted out of the federal exemptions of 11 U.S.C. § 522(d), debtors were entitled to exempt life insurance proceeds.[25]

The Trustee's objection to the claimed exemption is three-fold: (1) he asserts that with the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") in 2005, the "opt-out" language of KAN. STAT. ANN. § 60-2312(a) is no longer applicable and Kansas debtors may no longer avail themselves of this Kansas law exemption; (2) even if the exemption is still available to Kansas debtors, it is pre-empted by the language of 11 U.S.C. § 541(a)(5) that includes in the estate insurance proceeds received by a debtor within 180 days of the petition date; and (3) as a matter of law, the debtor claimed this exemption too late and should be barred from claiming it.

    **A.**    <u>**The Kansas "Opt-Out" Statute Remains Viable after BAPCPA**</u>

In 1980, the Kansas legislature enacted KAN. STAT. ANN. § 60-2312 which provides, in part:

(a) Except as provided in subsection (b), no person, as an individual debtor under the *federal bankruptcy reform act of 1978 (11 U.S.C. §101 et seq.)*, may elect

---

[25] The "opt-out" statute is found at KAN. STAT. ANN. § 60-2312(a) (2005).

exemptions pursuant to subsection (b)(1) of section 522 of such federal act.[26]

The Trustee argues that because the statute refers to the "federal bankruptcy reform act of 1978," it does not apply to the Bankruptcy Code as amended in 2005 by BAPCPA. The Court credits the Trustee with making a clever argument here, but concludes that the argument does not bear scrutiny.

The Federal Bankruptcy Reform Act of 1978 became effective on October 1, 1979 and expressly repealed the Bankruptcy Act of 1898, as it had been amended over its 80-year history.[27] Former § 522(b) allowed debtors to elect between the uniform federal scheme of exemptions afforded them by § 522(d) and the exemptions of their state of domicile. Former § 522(b)(1) also provided that a state could opt-out of allowing its residents to elect the federal exemptions and Kansas opted out in 1980 by its passage of § 60-2312. Other than changing the subsection letter and number references in former § 522(b), BAPCPA did not change the opt-out provision in any material way in 2005.[28]

While BAPCPA significantly modified the provisions of the "federal bankruptcy reform act of 1978," Congress did not repeal the Federal Bankruptcy Reform Act of 1978 as it did the 1898 Act in 1978. The Court notes that the Kansas statute expressly refers to "11 U.S.C. § 101, et seq.,"

---

[26] KAN. STAT. ANN. § 60-2312(a) (Emphasis added). As stated in *Walnut Valley State Bank of El Dorado v. Coots*, 60 B.R. 834, 835 (D. Kan. 1986), this statute limits Kansas debtors to exemptions available under state law and prevents Kansas debtors from electing the federal bankruptcy exemptions.

[27] PUB.L. 95-598, title IV, § 401(a), Nov. 6, 1978, 92 Stat. 2549 (providing that "The Bankruptcy Act [Act July 1, 1898, c. 541, 30 Stat. 544, as amended] is repealed.").

[28] Former § 522(b) was renumbered as § 522(b)(1) and former § 522(b)(1) was renumbered § 522(b)(2). Current § 522(b)(2) retains the States' ability to opt-out of the federal exemptions as follows: "Property listed in this paragraph is property that is specified under subsection (d), *unless the State law that is applicable to the debtor . . . specifically does not so authorize.*" (Emphasis added).

-9-

Case 06-10696    Doc# 73    Filed 12/21/07    Page 9 of 15

which now embodies BAPCPA  Much of the substance of title 11 as enacted in the 1978 Code remains intact, including the opting out provision.  Nearly all of the Code's structure remains in place.  The Court also notes that BAPCPA's amendments were not the first to the 1978 Code; indeed the Code was amended a number of times between 1978 and 2005, and notably so in 1984 and 1994, without changing the States' ability to opt-out of the federal exemptions.  In short, this Court concludes that KAN. STAT. ANN. § 60-2312(a) remains effective as an opt-out provision under § 522(b)(2) and that debtors may, and are in fact required to avail themselves of Kansas exemptions except as otherwise provided in KAN. STAT. ANN. § 60-2312(b) and § 522.

### B. The Kansas Insurance Exemption is Not Preempted by § 541

The Trustee's preemption argument is also unpersuasive.  Section 541 defines the scope of the property of a debtor's estate and § 541(a)(5)(C) includes in the estate, life insurance proceeds a debtor becomes entitled to receive within 180 days of filing his petition.  This inclusion of proceeds in the bankruptcy estate does not preempt the valid Kansas exemption of these proceeds, however, because § 522(b)(1) provides that *"[n]otwithstanding section 541 . . an individual debtor may exempt from property of the estate the property listed . . .in paragraph (3),"* property that is exempt according to the state or local law of the debtor's domicile.  Having concluded above that the Kansas opt-out statute remains effective to invoke the Kansas exemptions, it is clear to this Court that a Kansas debtor may retain exempt proceeds of a life insurance policy "notwithstanding section 541."

### C. The Timeliness of the Debtor's Claimed Exemption and the Saving Clause of Fed. R. Bankr. P. 1007 and Debtor's Alleged Bad Faith.

Immediately upon entering his appearance, Edward's new counsel filed amended Schedules B and C, disclosing formally the insurance benefits and claiming them as exempt under KAN. STAT.

-10-

ANN. § 60-2313.[29] He did not seek additional time in which to amend the schedules as provided for in Fed. R. Bankr. P. 1007(h). There appears to be no question whatsoever that the Trustee was aware of the existence of these assets by late June 2006 when he sought turnover of information regarding them. For reasons unknown (because Mr. Brown did not testify), the debtor never amended his schedules until he obtained new counsel. Nevertheless, there was active discussion of the insurance recovery from late June of 2006 forward.

The Trustee argues that Edward demonstrated bad faith in his actions and should be barred or estopped from claiming the exemption. While there is considerable evidence of confusion on Edward's part, there is virtually no evidence of bad faith. Instead, it appears to the Court that most of the conversation in this case occurred between the Trustee and Brown and did not actively involve Edward. The so-called "settlements" referenced in their correspondence are very questionable. It is not entirely clear that the minds of Edward and the Trustee ever met with respect to a settlement of this dispute. The Trustee testified to an agreement having been reached between himself and Brown, but there was no written agreement. Assuming that Brown and the Trustee made an oral agreement, Edward's contemporaneous conduct belies any contention that he intended to enter into the arrangement. He provided information to Brown that Brown in turn provided to the Trustee. He filed no response to the Trustee's turnover motion because, as he states, he was advised not to and he was led to believe his lack of cooperation would result in dismissal of his bankruptcy case. It appears that Brown advised Edward that the insurance benefits were not exempt and that Edward reluctantly accepted that advice and acted on it by providing the unspent funds to Brown's

---

[29] Edward's new counsel Stephen Johnson entered his appearance on January 16, 2007 and amended Edward's Schedules B and C the same day. Dkt. 35, 37.

office. Notwithstanding Brown's telling Edward that a motion to approve the settlement would be filed in bankruptcy court, that never occurred, perhaps because both times Brown and the Trustee thought they had a deal, Edward wrote a letter to the Trustee indicating the contrary. Thus, the Court cannot conclude that any sort of agreement was ever reached between the Trustee and Edward concerning these funds.

Fed. R. Bankr. P.1007(h) provides that if a debtor acquires an interest in property post-petition under § 541(a)(5), the debtor shall file supplemental schedules within 10 days of acquiring knowledge of the asset. The debtor may claim the exemption at that time. The Court may allow additional time for the schedules to be filed. There is no limitation in the rules on how much additional time may be allowed.[30] With the exception of seeking additional time under Rule 1007(h), Edward's new counsel made every effort to supplement the schedules immediately upon being retained and entering his appearance. Under the circumstances of this case, the Court cannot find that this amendment was untimely or that Rule 1007(h) alone bars the debtor from claiming the exemption.

The Court cannot find that Edward's conduct, while less than cooperative, amounts to such bad faith as to warrant denying his exemption of this property. From the record before the Court Edward neither concealed nor otherwise tampered with the funds, other than to pay his son's final expenses, which the Trustee implicitly allowed according to the correspondence.[31] He clearly believed that if he did not cooperate with the Trustee his bankruptcy case would be dismissed and

---

[30] *See* Fed. R. Bankr. P. 9006(b)(1).

[31] Other than his son's final expenses, Edward used the insurance benefits to pay a car repair bill for his daughter, some $1,500.

Case 06-10696    Doc# 73    Filed 12/21/07    Page 12 of 15

he could pay his creditors directly using the insurance funds he had received. Moreover, he appears to have cooperated with his own counsel up to the point of actually giving Mr. Brown the money to retain in trust. It does not seem that Edward was actively involved in the discussions between Brown and the Trustee. Nor does it appear that his failure to more quickly schedule this asset is the result of anything other than his attorney's conduct and apparent belief that the matter could be resolved short of further court action. While the Trustee has been put to some extra effort in this process, it is difficult to see what detriment the estate has suffered, especially when these funds would have been unquestionably exempt had they been timely claimed.

This is a very different case from *In re Ford*,[32] upon which the Trustee relies. There, the debtor was a paralegal who withheld scheduling a personal injury recovery until after her case had closed. She neither disclosed the pending action to the court nor to her counsel. Only after the case was closed, did she become aware that the pending action was an asset subject to disclosure. After learning this in August of 2004, she waited until October of that year to seek to reopen her case. and did not amend her schedules until December. Although she claimed that she did not become aware of the need to disclose the asset until August of 2004, the bankruptcy court held that she not only had knowledge of the claim, but also the motivation to conceal its existence. The court also concluded that she had done so in a manner that hindered the administration of the estate and that her actions amounted to blatant dishonesty. For those reasons, she was denied the right to claim the cause of action and its proceeds exempt. In affirming the bankruptcy court's decision, the Tenth Circuit held that an objecting creditor or trustee should be required to demonstrate by a

---

[32] 492 F.3d 1148 (10th Cir. 2007).

Case 06-10696    Doc# 73    Filed 12/21/07    Page 13 of 15

preponderance of the evidence that the debtor had acted in bad faith.[33]

The Trustee here falls far short of demonstrating by a preponderance of the evidence that the debtor knew of the existence of this asset *and* concealed it. Edward's knowledge is undisputed, but it can hardly be argued that he attempted to conceal the fact that he had received the funds in question. While the facts here suggest that he was reluctant to part with the money, nothing suggests that he withheld it from the Trustee or attempted to conceal its existence from his creditors. Indeed, Edward disclosed his interest in the insurance benefits to the Trustee at or shortly after his meeting of creditors some 30 days after his filing and long before his discharge. Upon discovering that he was a beneficiary under the life insurance policies, Edward sought to retain the money, dismiss his bankruptcy and pay his creditors directly. At all relevant times, the Trustee was aware of the circumstances and, in all likelihood, that the asset was potentially exempt. Edward's delay in claiming the exemption is not encouraged, but is explained somewhat by the casual, "off the books" manner in which his case was handled by his counsel. *Ford* simply does not mandate a finding of bad faith here.

Nor does Edward's conduct give rise to an estoppel as asserted by the Trustee. The doctrine of equitable estoppel prevents a party from taking a legal position inconsistent with prior conduct that places his adversary at a disadvantage.[34] The elements of equitable estoppel are:

> (1) the party to be estopped must know the facts; (2) the party to be estopped must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel

---

[33] *Id.* at 1157.

[34] *Spaulding v. United Transp. Union*, 279 F.3d 901, 909 (10th Cir. 2002).

-14-

must rely on the other party's conduct to his injury.[35]

The reliance on the other party's conduct must be reasonable.[36]

Here, the Trustee seems to suggest that he would not have dismissed the adversary proceeding against Edward but for his belief that a settlement had been reached when Brown sent the funds to the Trustee on November 14. The Court finds that the Trustee knew or should have known that Edward did not consent to the turnover of the funds and that Brown's settlement authority was in question. The Trustee received Edward's correspondence of November 16, where he advised the Trustee that Brown was no longer his attorney and requested release of the insurance money back to him. Even though the Trustee had this letter in hand, he proceeded to submit the journal entry of dismissal anyway. While Edward did not express his objection to turnover of the funds to the Trustee in terms of them being exempt, it was crystal clear that Edward believed he should be entitled to retain the funds. Under these circumstances, the Trustee's reliance was not reasonable.[37]

### Conclusion

The Trustee's objection to the debtor's exemption of the benefits received by him on account of his beneficial interest in insurance on the life of his son under KAN. STAT. ANN. § 40-414 and 60-2313(a)(7) is OVERRULED.

# # #

---

[35] *Id.*

[36] *Id.*

[37] *See also In re Hodes*, 287 B.R. 561, 570-71 (D. Kan. 2002), *aff'd* 402 F. 3d 1005 (10th Cir. 2005).